IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 9, 2005

## STATE OF TENNESSEE v. GLORIA M. PATTON STOVALL

**Direct Appeal from the Circuit Court for Franklin County**
**Nos. 15340, 15658     Buddy D. Perry, Judge**

---

### No. M2004-01401-CCA-R3-CD - Filed May 24, 2005

---

The defendant appeals the trial court's revocation of her probation based upon a new law violation, to wit: introduction of contraband into a penal facility. Specifically, she contends that: (1) no proof was presented that Soma is a controlled substance or legend drug; (2) the trial court improperly took judicial notice that Soma is a controlled substance; (3) no proof was presented of unlawful intent; and (4) the revocation order does not properly state the evidence relied upon and reason for revoking probation. Upon our review, we conclude that there was substantial evidence to support the finding of a new law violation; we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and NORMA MCGEE OGLE, JJ., joined.

Philip A. Condra, District Public Defender, and David O. McGovern, Assistant Public Defender, for the appellant, Gloria M. Patton Stovall.

Paul G. Summers, Attorney General and Reporter; Preston Shipp, Assistant Attorney General; James Michael Taylor, District Attorney General; and William B. Copeland, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### Facts and Procedural History

The defendant, Gloria M. Patton Stovall, pled guilty to one count of DUI first offense (Case # 15340) and one count of attempt to introduce contraband into a penal institution (Case # 15658). For DUI first offense, the defendant received a sentence of eleven months and twenty-nine days, all suspended except forty-five days. On the remaining charge, she was sentenced to two years and six months, with service of the first forty-five days in jail and the remainder on probation. The sentences were run concurrently.

On February 26, 2004, a probation violation report was issued, alleging a new law violation (introduction of contraband into a penal facility) and a violation of probation rule seven (possession of a Schedule IV controlled substance). Following a hearing two days later, the trial court revoked the defendant's probation because of the new law violation and reinstated the original sentences.

At the revocation hearing, Emily Faris testified that she was employed as a correctional officer with the Franklin County Sheriff's Department on February 2, 2004. On that day, the defendant came to the jail to begin service of forty-five days incarceration as part of her sentence for the aforementioned convictions. As the defendant was awaiting booking, two officers advised Faris that the defendant was "drinking cough syrup." At Faris' request, the defendant approached to be booked and placed a bag of personal items on the counter. As Faris spoke with the defendant in an attempt to ascertain her condition, the defendant's "hand rolled open and [two] pills rolled out on to the counter."

Faris stated that the defendant then:
snatched [the pills] back and [I] told her to put them back on the counter, and she wouldn't. So I walked over to her and asked her to place them back on the counter and she still wouldn't put them back. She went to put them to her mouth like she was going to take them, so I advised her that she needed to put the pills back on the counter, so she finally laid them back on the counter.

On cross-examination, Faris acknowledged that, although the pills had been sent to the lab, no results identifying the substance were available at the time of the hearing. She further stated the defendant told her that the pills were a prescription medication called Soma. Finally, she acknowledged that the whole encounter "probably" lasted three to five seconds and that the defendant ultimately complied with her request and placed the pills back on the counter.

Mike St. John testified that he was also a correctional officer with the Franklin County Sheriff's Department. He stated that it is departmental policy to record individuals who come into the jail when advance notice is given that they are "unruly." He further stated that, when he supervised the third shift, it was his policy to record the booking of all female inmates because only male officers were working at that time. He testified that the camera was located in central control and that it was impossible to turn the camera on from behind the counter. On cross-examination, St. John acknowledged that, according to his policy, there would be no reason to turn the camera on if a female employee was on duty.

As the final witness at the hearing, the defendant testified that Dr. Alano prescribed her Vioxx, Effexor, Xanax, and Soma. She further stated that she suffered from "deteriorating rheumatoid arthritis and deteriorating cartilage and several other things." When asked about the incident with Faris, the defendant stated, "[I] knew then that if I laid them out there and I didn't bring my prescription in with me, that I was going to get in trouble, so that's the reason why I hesitated." She also stated that she laid the pills down after "the second time [Faris] asked, not three or four." Finally, she reiterated that she had a prescription for the pills that were confiscated.

On cross-examination, the defendant acknowledged that she dropped two Soma pills onto the counter at the jail. When asked if the prescription called for her to take two pills at the same time, the defendant responded, "Yes. Well, he told me to go ahead and take – if I'm hurting real bad either go ahead and take it with the Darvocet or 800 milligram Ibuprofen or take two." The defendant also acknowledged that she was aware of the rules regarding drugs in jail and that she previously pled to and was convicted of attempting to introduce contraband into the jail.

At the conclusion of the hearing, the court found that:
[I]t's a clear case, and I'm not making any decision on the cough medicine, I'm not weighing that either way, I think she intended to take those pills into the jail with her. I think she knew exactly what she was doing there. I revoke her probation to serve her sentence. She's in the custody of the Sheriff.

The defendant now appeals to this court, contending that the trial court erred in revoking her probation.

**Analysis**

A trial court may revoke probation and order the imposition of the original sentence upon a finding by a preponderance of the evidence that the person has violated a condition of probation. Tenn. Code Ann. §§ 40-35-310, -311. The decision to revoke probation rests within the sound discretion of the trial court. State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). Revocation of probation and a community corrections sentence is subject to an abuse of discretion standard of review, rather than a *de novo* standard. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). Discretion is abused only if the record contains no substantial evidence to support the conclusion of the trial court that a violation of probation or community correction sentence has occurred. Id.; State v. Gregory, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997). Proof of a violation need not be established beyond a reasonable doubt, and the evidence need only show that the trial judge exercised a conscientious and intelligent judgment, rather than acted arbitrarily. Gregory, 946 S.W.2d at 832; State v. Leach, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995).

The defendant first contends that no evidence was presented indicating that Soma is a legend drug or controlled substance and that the trial court improperly took judicial notice that it was a controlled substance. Initially, we turn to the offense that is the basis of the new law violation and that is codified at Tennessee Code Annotated section 39-16-201 and states:
Introduction or possession of weapons, explosives, intoxicants or drugs into a penal institution where prisoners are quartered
(a)     it is unlawful for any person to:
        (1)     Knowingly and with unlawful intent take, send or otherwise cause to be taken into any penal institution where prisoners are quartered or under custodial supervision any weapons, ammunition, explosives, intoxicants, legend drugs, or any controlled substances found in chapter 17, part 4 of this title.

(2)     Knowingly possess any of the materials prohibited in subdivision (a)(1) while present in any penal institution where prisoners are quartered or under custodial supervision without the express written consent of the chief administrator of the institution.

(b)     A violation of this section is a Class C felony.

We first note that the pertinent statute encompasses both legend drugs and controlled substances; therefore, if the drug fits in either category, it is sufficient to sustain a violation. Furthermore, contrary to the defendant's argument, the record does not reflect that the trial court classified the pills as controlled substances or took judicial notice that they were controlled substances. Rather, at the end of the hearing, the trial court noted generally that "[the defendant] intended to take those two pills into the jail with her. I think she knew exactly what she was doing there." Moreover, the revocation order states that the basis for revocation was "new criminal conduct; to wit: introducing contraband into jail." Therefore, the defendant's argument that the trial court based revocation on possession and introduction of a controlled substance appears to be misplaced.

Instead, the pills would be classified as a legend drug. A legend drug is defined as "any item which federal law prohibits dispensing without a prescription from a licensed doctor, dentist, optometrist or veterinarian."[1] Tenn. Code Ann. § 53-10-101(a) (2004). The trial court could sustain the violation upon proof that the defendant knowingly and unlawfully possessed the prescription drug Soma in a penal facility.

While there were no definitive laboratory reports available at the hearing, the record reflects substantial evidence that the pills possessed by the defendant were Soma. At the hearing, Faris testified that the defendant told her that the pills were Soma. The defendant corroborated Faris' testimony when she took the stand and admitted that the pills that fell on the counter were Soma and that she received a prescription for them. We conclude that the trial court implicitly found the drug to be within a class prohibited by the statute, based upon the admission by the defendant, and properly ruled that the defendant committed a new law violation.

The defendant also avers that there was no proof presented to support unlawful intent; however, we are not persuaded by this argument. The transcript of the revocation hearing reflects that the pills fell from the defendant's hands, that she "snatched them back," and that she twice refused to put them back on the counter. Further, the defendant stated: "[I] knew then that if I laid them out there and I didn't bring my prescription in with me, that I was going to get in trouble, so that's the reason why I hesitated." Finally, she acknowledged that she was aware of the rules regarding drugs in the jail when she brought the pills into the facility. Therefore, we conclude that ample evidence was presented to prove that the defendant knowingly and unlawfully took the legend drug Soma into a penal institution.

---

[1] Although this definition is provided in a different part of the Code than that in which our violation statute is found, we conclude that the definition is certainly applicable in this context.

-4-

Finally, the defendant avers that the trial court did not properly state the evidence relied upon and the reasons for revoking probation. Probationers are guaranteed various procedural due process rights prior to revocation, including "'a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation].'" Gagnon v. Scarpelli, 411 U.S. 778, 786, 93 S. Ct. 1756, 1762 (1973) (quoting Morrissey v. Brewer, 408 U.S. 471, 489, 92 S. Ct. 2593, 2604 (1972)). However, this Court has previously noted "that 'the majority of courts that have addressed this issue adopt the view that the transcript may substitute for the written statement if the record includes the evidence relied upon and the reasons for the revocation.'" State v. Leiderman, 86 S.W.3d 584, 590 (Tenn. Crim. App. 2002) (quoting Mihal Nahari, Note, Due Process and Probation Revocation: The Written Statement Requirement, 56 Fordham L. Rev. 759, 772 (1988)).

In the present case, the revocation order indicated that the basis for revocation was "new criminal conduct; to wit: introducing contraband into jail." Further, after hearing the proof at the revocation hearing, the trial court opined, "I think she intended to take those two pills into the jail with her. I think she knew exactly what she was doing there. I revoke her probation to serve her sentence." Upon review of both the transcript and the order, we conclude that the requirement of a written statement is met. The trial court explicitly stated the grounds for revocation in the order, the reasoning was explained at the conclusion of the hearing, and the record contained the testimony the trial court relied upon in reaching its decision. Therefore, the defendant's due process rights were not violated.

**Conclusion**

We affirm the revocation of the defendant's probation.

_____
JOHN EVERETT WILLIAMS, JUDGE